THOMAS E. MOSS
United States Attorney

MICHAEL P. HATZIMICHALIS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-1844
Fax: (202) 307-0054
Michael.P.Hatzimichalis@usdoj.gov
Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **Case No.** |
| Petitioner, | ) ) ) | **PETITION TO ENFORCE IRS SUMMONS** |
| v. | ) ) | |
| ALAN PESKY, | ) ) | |
| Respondent. | ) ) ) ) ) | |
| _____ | ) | |

The United States of America, by and through its undersigned counsel, hereby petitions this Court for an order to enforce a certain Internal Revenue Service ("IRS") Summons served upon Respondent Alan Pesky:

1. Jurisdiction over this matter is conferred upon this Court pursuant to 26 U.S.C. §§ 7402(b) and 7604(a) and 28 U.S.C. §§ 1340 and 1345.

2. Venue over this matter is proper in the District of Idaho because the Respondent is located within the boundaries of this judicial district.

3. Shane Cole is a duly commissioned Revenue Agent with a post of duty in Boise, Idaho, and is authorized to issue an Internal Revenue Service Summons pursuant to the authority contained in Section 7602 of Title 26 U.S.C., Treas. Reg. § 301.7602 1, 26 C.F.R. § 301.7602-1, and Internal Revenue Delegation

1 Order No. 4 (as revised). (Declaration of IRS Revenue Agent Shane Cole ¶4) (hereinafter, "Cole Decl.").)

2     4.      In his capacity as a Revenue Agent, Cole was, and presently is assigned to examine the federal income tax liabilities of Alan and Wendy Pesky (collectively, "the Peskys") for the 2002, 2003, and 2004 tax years. (Cole Dec. ¶3.)

5     5.      On May 9, 2006, the IRS opened an examination of the Peskys' 2003 and 2004 income tax returns. While the audit examined all aspects of their 2003 and 2004 income tax returns, the examination also focused upon a purported $1,510,000 million charitable contribution deduction in the form of a conservation easement that was carried over from the Peskys 2002 income tax return. The Peskys deducted the purported $1.5 million charitable contribution in their 2002, 2003, and 2004 income tax returns because they could not fully deduct the entire contribution in a single tax year. (Cole Dec. ¶5.)1/

11     6.      The purported $1.5 million charitable contribution appears to have its genesis in a series of bargained-for-exchanges between the Peskys and The Nature Conservancy (hereinafter, "the Conservancy"). On or about September 1993, the Peskys purchased a one-half interest in three contiguous parcels of real property (hereinafter, "the Ketchum Property"). Peter and Marjorie Lee Stern also purchased a one-half interest in the Ketchum Property via their family trust. The Ketchum Property is land-locked and was undeveloped at the time of the sale. The Ketchum Property is adjacent to property owned by the Conservancy, which is the former residence of Ernest Hemingway (hereinafter, "the Hemingway Property"). Prior to the Peskys' purchase of the Ketchum Property, the Ketchum Property was the subject of litigation between its prior owners, the Conservancy, and the Peskys. Broadly, the prior owners brought suit, seeking to establish an access easement sufficient to develop the Ketchum Property. During the course of this land-

---

1/The value of the charitable contribution was apparently calculated as follows: Respondent hired a valuation appraiser, Mark Richey, who claims to have valued the Ketchum Property both *before* and *after* the placement of the purported charitable contribution. The purported difference in these values yielded the amount purportedly contributed to charity. During the initial audit examination, the IRS summoned Richey's valuation file. In *United States v. Richey*, 08-cv-452-S-EJL, 2009 WL 595588 (D. Idaho Mar. 6, 2009), Judge Edward J. Lodge ruled that Richey's work file was protected from disclosure by the attorney-client privilege and the work product doctrine. The United States has appealed that decision to the Ninth Circuit Court of Appeals; substantive briefing has been completed before the Ninth Circuit. The IRS has also issued a summons to Richey in the corresponding audit examination of Peter and Wendy Stern, the co-owners of the Ketchum Property. The disposition of that summons is currently pending before the Court. *See Stern v. United States*, (D. Idaho MC-09-6670).

access litigation, the Conservancy acquired a six-month option to purchase the Ketchum Property from the prior owner, which expired on September 29, 1993. It appears that the option was seen as an opportunity by the Conservancy to moot the land-access litigation and prevent the Ketchum Property from being developed. The Conservancy did not or could not exercise its six-month purchase option. (Cole Dec. ¶¶ 6-7.)

7. At some point during the land-access litigation, Respondent Alan Pesky (hereinafter, "Respondent") approached the Conservancy with a proposal to acquire the option and to exercise it. In September 1993, the Conservancy and Respondent struck a deal:

(a) Respondent would purchase the Conservancy's option for $50,000;

(b) Respondent would exercise the $50,000 option and purchase the Ketchum Property;

(c) Respondent would execute a publicly-recorded development restriction in favor of the Conservancy, limiting the Ketchum Property's development to structures no taller than twenty-five feet; and

(d) The Conservancy would provide access to the Ketchum Property via a driveway easement over the Hemingway Property, allowing for utilities and development of the Ketchum Property.

(Cole Dec. ¶8.)

8. Shortly after the Peskys' 1993 purchase of the Ketchum Property, the Peskys marketed the Ketchum Property and began to seek the local government's approval of the driveway easement promised to them by the Conservancy. (Cole Dec. ¶9.)

9. On March 12, 2002, the Peskys sold the Ketchum Property to Jack Bunce for approximately $7.3 million. Days before the sale was finalized, Respondent executed and recorded a purported conservation easement upon the Ketchum Property in favor of the Conservancy. (hereinafter, "the March 2002 easement"). According to the March 2002 easement, development of the Ketchum Property is restricted to no more than one residence and one guest house. According to Respondent's real estate appraiser, the Ketchum Property was worth $10,380,000 before the March 2002 easement, and only worth $7,360,000 after the March 2002 easement. The value of the Peskys' purported charitable contribution is one-half of the difference between these two values, or $1,510,000. (Cole Dec. ¶10.)

10. In December 2008, the IRS issued a Statutory Notice of Deficiency per 26 U.S.C. § 6212 to the Peskys with respect to the 2003 and 2004 income tax years, disallowing their purported charitable

1   contribution deduction and asserting an accuracy-related penalty pursuant to 26 U.S.C. § 6662. (Cole Decl.
2   ¶ 11.) The Peskys have paid the increase in tax, interest, and penalty computed in the Statutory Notice of
3   Deficiency, and have filed an administrative claim for refund with the IRS. To date, however, the Peskys
4   have not filed a refund action in District Court. (Cole Dec. ¶ 11.)

5   11. In April 2009, however, the IRS re-opened the examination of the Peskys' 2003 and 2004
6   income tax returns. The examination was properly re-opened because the IRS came into possession of certain
7   evidence—after the issuance of the December 2008 Statutory Notice of Deficiency—indicating that the $1.5
8   million charitable deduction may have also been fraudulent. For example, the IRS discovered that in or
9   about September 1993, the Peskys also entered into a "secret pledge agreement" with the Conservancy,
10  which was not publicly recorded. The secret pledge agreement, among other things, provides that the Peskys
11  must "convey" to the Conservancy "all right to develop or improve the [Ketchum] Property except for one
12  single-family residence and such accessory buildings as are allowed under the applicable zoning." (Cole
13  Decl. ¶12, Ex. 1.) The version of the secret pledge agreement attached to Agent Cole's Declaration is
14  unsigned. The secret pledge agreement's existence is, however, confirmed by other documents, *e.g.*, notably
15  several amendments to the secret pledge agreement. The Peskys do not deny that they entered into the secret
16  pledge agreement with the Conservancy. The Peskys, though, inexplicably, refuse to provide the signed and
17  final version of the secret pledge agreement or information regarding it to the IRS. The secret pledge
18  agreement also includes a liquidated damages provision: should the Peskys not convey the easement to the
19  Conservancy, they must pay the Conservancy a $2 million penalty. Respondent demanded that the secret
20  pledge agreement not be recorded or otherwise made public. (Cole Dec. ¶12.)

21  12. In 1995, Respondent hired a real estate broker in an attempt to sell the Ketchum Property, and
22  disclosed the secret pledge agreement to him. Respondent's real estate broker explained to him: "As you
23  know, this pledge agreement should <u>not</u> see the light of day." (Cole Dec. ¶13, Ex. 2) (emphasis in original.)

24  13. As noted above, on March 12, 2002, the Peskys sold the Ketchum Property to Jack Bunce for
25  approximately $7.3 million. Prior to closing, and after the parties agreed upon the purchase price,
26  Respondent convinced Bunce to allow a purported conservation easement to be placed upon the Ketchum
27  Property. Bunce agreed. The easement mimicked the terms of the secret pledge agreement: development

28

1  of the Ketchum Property was restricted to no more than one residence and one guest house. The easement
2  was also used by Bunce to allow him to secure the local government's approval of his development plans,
3  which corresponded with the terms of the secret pledge agreement. (Cole Dec. ¶14.)

4      14. During the initial examination, the IRS issued two Information Document Request ("IDRs").
5  The IDRs asked Respondent to identify any restriction upon the Ketchum Property prior to 2002. While
6  Respondent responded to the IDRs, he failed to disclose the secret pledge agreement to the IRS. (Cole Dec.
7  ¶15, Ex. 3.)

8      15. Given the foregoing, the IRS is considering whether to assert a civil fraud penalty against the
9  Peskys pursuant to 26 U.S.C. § 6663. As a result of the civil fraud examination, the IRS has additionally
10 opened an audit examination into the Pesky's 2002 income tax return, which originally reported the $1.5
11 million charitable contribution. (Cole Dec. ¶ 17, Ex. 4.)

12     16. On September 18, 2009, and in furtherance of the re-opened examination described above,
13 Revenue Agent Cole issued an Internal Revenue Service Summons (Form 2039) to Respondent to provide
14 testimony and produce the books, records, papers, and other data relating to the 2003 and 2004 income tax
15 periods at issue under examination. (Cole Decl. ¶17, Ex. 4.)

16     17. On September 18, 2009, Revenue Agent Cole personally served an attested copy of the
17 summons upon Respondent. The summons directed Respondent to produce documents in order to
18 substantiate certain tax items, and to appear in order to provide testimony. (Cole Decl. ¶18.)

19     18. On September 30, 2009, Respondent's representative informed Revenue Agent Cole that his
20 client would not comply with the IRS summons. (Cole Decl. ¶19, Ex. 5.)

21     19. Respondent failed to appear on October 2, 2009 and comply with the IRS summons by
22 providing testimony or producing documents. (Cole Decl. ¶20.)

23     20. To date, Respondent has failed to comply with the IRS summons. (Cole Decl. ¶21.)

24     21. The summoned testimony and documents may be relevant to the current audit examination.
25 For example, Respondent's testimony and documents may shed light upon the correctness of his 2003 and
26 2004 income tax returns by providing information regarding, among other things, the secret pledge
27 agreement and its various amendments, the six-month purchase option, the March 2002 easement, the sale

28     5

to Mr. Bunce, the driveway easement, the twenty-five foot building restriction, and Respondent's dealings with the Conservancy. (Cole Decl. ¶22.)

22. The information sought from Respondent is not already in the possession of the IRS. (Cole Decl. ¶23.)

23. No Justice Department referral is in effect within the meaning of 26 U.S.C. § 7602(d) with respect to the Peskys for the tax periods for which testimony is sought. (Cole Decl.¶24.)

24. All administrative steps required by the Internal Revenue Code for the issuance of an IRS summons have been taken. (Cole Decl. ¶25.)

25. In order to obtain enforcement of a summons, the IRS must establish that the summons: (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative steps required by the United States Code. United States v. Powell, 379 U.S. 48, 57-58, (1964). The Government's burden under Powell "is 'a slight one' and typically is satisfied by the introduction of a sworn declaration of the revenue agent who issued the summons that the Powell requirements have been met." Fortney v. United States, 59 F.3d 117, 120 (9th Cir.1995) (citing United States v. Dynavac, Inc., 6 F.3d 1407, 1414 (9th Cir.1993); United States v. Gilleran, 992 F.2d 232, 233 (9th Cir.1993)).

26. In support of this petition and incorporated herein by reference, the United States submits the Declaration of Revenue Agent Shane Cole and the exhibits attached thereto. The United States has met the Powell requirements through these documents.

WHEREFORE, petitioner the United States of America respectfully prays as follows:

A. That this Court enter an order directing Respondent to show cause in writing, if any, why it should not comply with and obey the aforementioned IRS summons insofar as it seeks testimony and documents responsive to Document Request No. 6, including but not limited to, the secret pledge agreement;

B. That this Court enter an order directing Respondent to fully obey the aforementioned summons insofar as it seeks Respondent's testimony by ordering the attendance and testimony of Respondent, before Revenue Agent Shane Cole, or any other proper officer or employee of the IRS, at such time and place as may be set by Revenue Agent Cole or any other proper officer or employee of the IRS;

C. That the United States recover its costs incurred in maintaining this action; and

D. That the Court grant such other and further relief as it deems is just and proper.

Respectfully submitted this 16th day of March 2010.

                            THOMAS E. MOSS
                            United States Attorney

                            /s/Michael P. Hatzimichalis
                            MICHAEL P. HATZIMICHALIS
                            Trial Attorney, Tax Division
                            U.S. Department of Justice
                            P.O. Box 683
                            Ben Franklin Station
                            Washington, D.C.  20044-0683
                            Telephone:  (202) 353-1844
                            Fax: (202) 307-0054